Good morning, Your Honor. My name is Ramon Ferrer and I represent the appellant, Reri Nani Reri Septimo. Great. Good morning, Your Honor. Timothy Hogan on behalf of David Farmer, the trustee, was also present. Fine. Then you may proceed if you want, Mr. Ferrer, if you're ready. Yes. Actually, Your Honor, the first issue seems to be do we have a right to be here because Judge Ezra felt that it was the least, which is our main argument, should not have been appealed. It was our whole argument in our memorandum in opposition to the trustee's motion to compel. First of all, it starts at page 60 and goes through page 65 of the amended excerpts of record. So we made it initially and then we appealed it. Now, of course, it will be up to Your Honor to decide whether I brought it up correctly here. But the whole point is, is the trustee's trying to sell the property. And prior to this case, and I have mentioned that, prior to my case going, as a matter of fact, two weeks prior to the case, we had always been allowed to. For some reason, the state of Hawaii was not enforcing exemptions against the leases. They would let them go. Well, without telling us, it would have been nice if they had called all the attorneys and told them, hey, we're not going to allow it anymore. Well, I went ahead and tried this case, and then now they didn't allow the exemption. But there is a problem here, and that is that it is a leaseholder. There's a property on it.  He didn't assume it, even though we didn't tell him in the first place that we did amend it in 419. Didn't you waive that issue by not raising it below? Pardon me? Didn't you waive that issue by not raising it below? Well, we kept bringing it up. But anyways, whether he did assume it or not, he can't assume the lease. Well, what about, just to make sure, because, you know, some of these, like this law is peculiar to Hawaii. But if the trustee has a qualified buyer that would fit into that box, and it's a pass-through situation, why wouldn't that be sufficient? Because she holds the lease, and she is in compliance with the terms of the lease. And the only way that can be taken away from her is through a contested case hearing through the Hawaiian Homes Commission. They have their, for doing that. But she would have to not be in compliance. That's the way it's historically been taken care of. She would have to not be in compliance with the terms of the lease for them to take the lease away from her. So what we're saying is the trustee can't take the lease away from her unless she's not in compliance. Why do you say that? The lease is an asset of the estate, correct? Right. So you mean to say that unless she's in default under the lease, she can't lose that as an asset of the estate? Well, we exempted that. The lease is only $99. Ninety-nine-year lease, dollar a year. She took the value. Yeah, she exempted that. All right. Now, I thought your better argument was that the trustee is not a Native Hawaiian and therefore can't take possession of the lease even for the purpose of transferring it. No, he cannot. Is it your position that under the 1920 Act, only Native Hawaiian trustees can act to transfer the asset? Yeah, or terminate her interest in the lease, yes. How do you handle this language in the 1920 Act in Section 208-5? Such interest shall not, except in pursuance of a transfer, mortgage, or pledge to or holding for an agreement with a Native Hawaiian, be subject to attachment, levy, or sale upon court process. It sounds to me as the Act foresaw this issue and said a sale by court process so long as it is for a Native Hawaiian to be the transferee is available under the Act. Do you agree with that? Well, I agree with that, yes. Well, then, thank you very much. But she has an interest in the lease. Our argument is that she has an interest in this lease and she's in compliance with the lease. Well, let's start. She could have assigned it, correct, to a Native Hawaiian. Oh, voluntarily, yes. Well, she could have assigned it. Well, that's what she doesn't want us to do. I know she doesn't want us to. I understand. But she could have. Let's just start with that, right? Yes, right. But now, of course, she's in bankruptcy, so doesn't the trustee stand in her shoes? No, I don't believe so. Because the issue in the end is who holds the lease. She qualifies under the Hawaiian Clause, and the prospective transferees qualify under the Hawaiian Clause. So nobody's holding the lease who doesn't qualify under that hypothetical, correct? Well, no, I think she holds because she still has the lease interest. Now, there's a solution, but of course it may be a ridiculous solution. But they can't take the property. They can't sell a house, and people buy houses all the time and move them somewhere else. And then she would be able to put another house on the same property if she were to hold on to the lease. It's a nice piece of property, so it may still be possible to sell it and make a profit so the creditors can get paid. But in that situation, she should be allowed to hold the lease, because the house can be taken off the property. Okay. That's my argument there. I appreciate it. Thank you very much. Thank you. May it please the Court, Timothy Hogan on behalf of the trustee, David Farmer. When the debtor filed bankruptcy, she voluntarily transferred her interest, whatever they were, to the state. The trustee becomes essentially vested with those rights and administers them. There was an objection to the claim of a total exemption. The trustee prevailed on that. That was not appealed. There was a subsequent exemption filed, which was the D-5 exemption, what we call the wild card, which is a remaining exemption, which I think in this case would be about $10,000. And if the trustee were not able to be able to pay that in closing with all the costs of sales and everything else, then he wouldn't administer it. But that's what the exemption is presently, is to pay the debtor the remaining wild card, because she's used up her other exemptions on other property. Mortgages are put on these properties. They are foreclosed. The only restriction that is followed universally in Hawaii is that the new buyer has to be a qualified beneficiary. There are many beneficiaries in Hawaii, and this house, we had interest in this house. What we are here today on is a motion to get the debtor to allow us to put a realtor in to do a broker opinion for us. Your position is everything in back of that is not before us. None of that was before Judge Farris. This Court decides what's before it, and I wouldn't presume to say, but I've argued. Your position is that the sole issue that we're here on is the motion to compel. That's correct, Your Honor. That is what was appealed, and it has evolved over time in going through with Judge Ezra's viewing the record, and then things are raised. But the issue of not being able to sell it was already raised. There's two aspects. The actual rejection issue wasn't raised before the bankruptcy court. But I think, as Mr. Ferrer noted, and as we see in the briefs, the notion of the trustee not being able to, quote, transfer the lease, that was raised, correct? That is correct. Wouldn't it be, let's just say the trustee didn't have that authority, that would implicate then the duty to cooperate? If we were doing something, I believe so. I'd have to guess what Judge Farris would be thinking. But if I walked into Judge Farris's courtroom and tried to do something that was not permitted, he's often, I hope they don't do it that often, but he'd say, no, that's not permitted. This was a case in which it was a general statement, and Judge Bea, I think, correctly pointed out that there are people you can execute on this property. A sheriff can execute. The trustee is a super lien creditor. He holds the rights under the hypothetical rights under the 547 rights, I believe, of a hypothetical lien creditor, executing with an unexecuted writ. So, essentially, the trustee would not become the owner of the property because he's not a native Hawaiian. I presume he's not. But he would. Nobody is the owner, right? Are you a lessee? I know it's 99 years. Yeah, I went into this issue, and I know it's not brief, but it's a 99-year lease for $1 a year that can be extended for another 99. It's a 198-year lease, and I didn't, again, what is a fee simple? I mean, how close do you get to ownership? Let me ask you this. If you take it out of the bankruptcy context with the trustee and put it in the nature of a bank that comes in, as you said, they can foreclose on a mortgage or some kind of loan, I suppose, in which this was collateral. If that happens, who becomes the title holder? Well, if you're thinking, I'm going to give you my best, you know, having practiced in real property and bankruptcy in Hawaii for 20-something years, the fee interest is considered to be the state of Hawaii under this Hawaiian Homes Act. It's the state of Hawaii parent patria relationship to the native Hawaiians when they did the Hawaiian sort of organic acts. So the state would claim to be the fee owner. If I hold a 200-year interest on property for a buck a year, I might claim to be a fee owner. There are in olden days. I was asking you if the bank comes in and does some kind of foreclosure, which you had mentioned, what's then, and they're successful, what then is the status of the various either leasehold or ownership holdings  It is my understanding, and this isn't just having discussed this with the Attorney General's office and people, I know it's not on the record, but it's what I'll put in the record when it goes, if it goes back to Judge Ferris, is that they will just require a qualified beneficiary be the bidder at an auction, at a foreclosure auction. What would have happened if she had listed this as an asset in the original petition and the trustee had not assumed the lease? Well, I think the argument that we've made would be that it would be deemed rejected. And typically... And what would be the consequence of that? It would be removed from the estate. It would be essentially outside of the estate. It would be an abandonment. I mean, I wouldn't say it's a fully abandoned, because she might have some rents that might have been part of it. There's always the issue of what's actually abandoned. Paying a dollar a year? A dollar a year, Your Honor. Yeah. And for 99 years, extendable for another 99 years. That's my understanding from the statute, Your Honor. How long has she been there? I'm afraid I don't know, Your Honor. Maybe Mr. Farrar can tell us. Would it be unusual for a person in that circumstance to consider this to be real property? Oh, absolutely, Your Honor. She scheduled it as tenancy in severalty in the original filing, which I consider... But not listed as a leasehold? Not as a leasehold. And Hawaii has a lot of leasehold land, Your Honor. I remember prior to going to law school, reading the Hawaiian Homes Midkiff case, which was the original sort of condemnation case that went up to the Supreme Court and dealt with Hawaiian rights. And there were leaseholds everywhere. And I would state for the record, Your Honor, that throughout the time I practiced in bankruptcy, it was not common that those leases were assumed in the bankruptcy cases. The existence of this property or this interest was no mystery to the trustee? The existence of the property was not a mystery, Your Honor. That is correct. The property was scheduled as a tenancy by the severalty under Schedule A, real property. That's kind of a windfall for the trustee, isn't it? Well, if it was scheduled as a leasehold interest, Your Honor, I believe the trustee would normally move to assume or extend the date, which is commonly done. As long as it's done prior to the period passing, the statute provides for that. And it's not an uncommon thing to do is to move to extend and to assume. There's always a challenge in this, Your Honor. I want to be candid with the Court. When you move to assume a lease and you're assuming it and you're not a Native Hawaiian, it does run into some challenges for, you know, when you're a trustee in these circumstances. I guess the way to get around it is we only have Native Hawaiian trustees. My question is what if you don't have a qualified person right now? I mean, I recognize that's in the record. It says there is. But let's just say there's not, then what happens? I believe under the State of Hawaii, at least my understanding would take the position you can't convey this to a non-Hawaiian. And there's a blood quantum requirement of who is a Native Hawaiian. So there's a number of steps. But there is a whole list of people waiting for homes. And if I may, Your Honor, and this is not in the record, but the problem is the state has to guarantee those mortgages. There's a mortgage on this because I know the court already addressed the issue of mortgage. There is a mortgage. It's in Schedule B in the original. And it's a regular bank mortgage. The problem is for the state to take these mortgages because of where the titles are, they have to guarantee them, and the state doesn't have the money. And that's why the ---- How much is the new buyer paying? Well, we weren't able to get beyond. We need to get a broker in to get an opinion. Is that something you don't know? We didn't have an offer, Your Honor. I don't want to misrepresent. I thought there was a qualified buyer. We had someone who wanted the house who was a qualified buyer who they wanted to go in and look at the house to see if they have to go get a mortgage and things, Your Honor. We hadn't gone to that level, but they were a Native Hawaiian. Has the trustee expressed an opinion of the value of the property? That was why we had the broker, Your Honor. That's what the broker said what the value of the property is. He did. We believe there was significant equity in the property, Your Honor. I don't recall offhand what that number was, but it was enough for us to easily administer it, pay the exemption, and then have money to pay all the creditors. And that's what his job is. Is there any problem in selling it to the debtor? There's never a problem trying to resolve these cases, Your Honor, with debtors. We do it all the time. I have a practice that's settlement practice, essentially. So that's not uncommon. The bankruptcy court approves it. So you'd be willing to mediate it? The difficulty is, just so the court understands, and I know I'm over time, so I apologize, is the comment I made about the difficulty in mortgages, for people to do deals, they need to get a mortgage usually for real property transactions. You go out and you get a deal. It's what a bankruptcy usually turns into. Because of the nature of all this, it's hard to get a loan on these houses, and so there's a big list of people who are qualified, but they can't get a loan, unless they have cash. Not common sense. This lady is there. It just seems like this conundrum. She's there. You say, well, we have a, quote, qualified buyer, but actually the qualified buyer, as a practical matter, can't get a mortgage anyway. So the question I thought Judge Hawkins was leading you to, isn't there some other resolution you might figure out with this individual? Always, Your Honor. We've gone back and forth. Okay. Well, you've exceeded your time, but that's because we've asked you questions. But suffice it to say, you know, in these kind of situations, we're always happy to issue a legal ruling. But until we do that, it gives the parties a little opportunity to see if there isn't a little give on both sides as to alternative solutions, because the Ninth Circuit's not always the best and final place to resolve a Hawaiian leasehold. Yes. But we will if need be. Okay? I understand, Your Honor. Thank you for your time. Did you want to take any rebuttal? Oh, well, yes. Okay. And also the question came up. She's held a lease since October 14, 2000. So she's been there 14 years. Right. She's been there 14 years already. And she's working again, so she's making money. I did send an email to the trustee that she may be able to get a second mortgage on it, because the property doesn't have a lot of equity, answering that question. I think it's got at least $200,000 worth of equity. It's a very nice house. Are you willing to sit down with a court-appointed mediator and see if you could resolve this? I'd like to do that and have the client with me. What's the trustee's position? Fine with the trustee, Your Honor. We're always willing to try to work things out. Thank you. One thing, Your Honor, she's a very competitive person. So, you know, like a lot of the people in the Hawaiian homelands, they really feel like they've gotten the short end of the stick all these years. So they're very suspicious. I think this would be a good place for you to stop. I don't know that you need to say any more. Okay. Thank you very much. We'll issue an order in due course. Thank you very much for your argument. We appreciate both counsel. We also appreciate the trustees' flexibility. The case just argued, Septimo v. Farmer, as submitted.
judges: Hawkins, McKeown, Bea